**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ASHLEY N. WRIGHT, :

Plaintiff, :

vs. : CA 11-0432-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
:
Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the March 28, 2012

hearing before the Court, it is determined that the Commissioner's decision denying plaintiff benefits should be affirmed.[1]

Plaintiff alleges disability due to diabetes mellitus, hypertension, sickle cell trait, and asthma. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.**
>
> **2. The claimant has not engaged in substantial gainful activity since August 26, 2008, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).**
>
> The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity because the claimant's earnings were below the presumed substantial gainful employment level.
>
> **3. The claimant has the following severe impairments: diabetes mellitus, hypertension, sickle cell trait, and asthma (20 CFR 404.1520(c) and 416.920(c)).**
>
> The claimant has a long history of treatment for diabetes, dating back to at least 2006. The claimant has been diagnosed with neuropathy, hypertension, sickle cell trait, and asthma. Because these impairments have more than a minimal effect on the claimant's ability to perform basic work activities, they are considered severe impairments.
>
> The claimant's enlarged thyroid and alleged arthritis are nonsevere impairments. There is no evidence in the record that the claimant's enlarged thyroid has resulted in a significant limitation on the claimant's ability to work. Although the claimant was diagnosed with an enlarged thyroid, treatment notes show normal thyroid antibody levels and a normal thyroid function test.
>
> The claimant has also alleged arthritis as a cause of her disability. Treatment notes state that the claimant has reported a past history of

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

"arthritis" but there is no evidence that the claimant has ever been diagnosed with arthritis. The regulations at 20 C.F.R. 404.1520(a)(4)(ii) and 416.920(a)(4)(ii) provide that for an impairment to be considered severe it must be established as a "medically determinable physical or mental impairment" that meets the duration requirements of the Act. . . . A medically determinable impairment must be established by signs (anatomical, physiological or psychological abnormalities which can be observed and shown by medically acceptable clinical diagnostic techniques) and/or laboratory findings which "are anatomical, physiological or psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic technique." While the claimant has reported "arthritis", the record does not contain any indication that the claimant's health care providers have [] set forth objective findings, test[] results, observations or other studies. Neither has there been a diagnosis of arthritis. I do not find that there is a medically determinable impairment of arthritis.

I have also considered the claimant's obesity and find no evidence documenting any significant functional limitation stemming from obesity alone or in combination with other impairments. While the claimant has alleged no functional limitation related to obesity, the undersigned fully accommodated its potential impact on her other severe impairments in formulating the residual functional capacity finding, pursuant to Social Security Ruling 02-1p. For example, the limitation on climbing ladders, ropes, and scaffolds accommodates her obesity.

The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. . . . The claimant reported feeling depressed in May 2009 and was briefly prescribed Zoloft. There is no evidence in the record, however, that the claimant is currently taking Zoloft or any other medication for depression. Moreover, the claimant did not list depression as a cause of her disability on any Disability Report nor did the claimant testify to any ongoing difficulty with depression.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

. . .

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant requires a sit/stand option. The claimant can operate foot controls no more than occasionally. The claimant cannot climb ladders, scaffolds, or ropes. The claimant cannot work around unprotected heights or dangerous [equipment]. The claimant cannot tolerate more than occasional exposure to temperature extremes, humidity, wetness, and concentrated environmental pollutants. The claimant cannot perform detailed or complex job tasks.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged diabetes mellitus and neuropathy, the record shows that the claimant initially sought treatment at the Franklin Primary Health Center in December 2006. The claimant was prescribed various medications to control her blood sugar, including Glucophage and Humalog. The claimant was also provided diet and exercise counseling. Treatment notes show generally normal foot exam and musculoskeletal exams. The clamant also sought treatment from Huey McDaniel, M.D., a specialist in diabetes, metabolism, and endocrinology, beginning in January 2010. Upon examination, Dr. McDaniel observed some pain in the claimant's ankles, some wrist pain with movement, and some MP joint pain with no edema and trace dorsalis pedis pulses. Dr. McDaniel also observed a decreased vibrancy sense in the claimant's feet, some decrease in grip in the hands and a decrease in light touch up to just above the ankles. Dr. McDaniel diagnosed the claimant with diabetes

mellitus and neuropathy. Two subsequent examinations showed similar findings.

Dr. McDaniel also diagnosed the claimant with asthma, hypertension, and sickle [cell] trait. There is no evidence, however, of functional limitations related to these impairments. Treatment notes show that the claimant's hypertension appears to be well-controlled with proper use of medication. The claimant's sickle cell trait appears to be asymptomatic. Although the claimant reported occasional chest pain and shortness of breath, treatment notes show that the claimant smokes a pack of cigarettes a day. Additionally, there is no evidence in the record that the claimant sought treatment specifically for asthma or sickle cell trait or that the claimant is taking any medication for her asthma or sickle cell trait, which suggests that the claimant's impairments are not to severe as to warrant treatment. Moreover, the claimant did not testify to any ongoing difficulties controlling her blood pressure or any ongoing difficulties with her asthma or sickle cell trait. Nor did the claimant list asthma as a cause of her disability on any Disability Report. Consequently, I find no evidence of functional limitations related to claimant's asthma, hypertension, or sickle cell trait beyond those inherent in the light level of exertion, except that the claimant cannot climb ladders, scaffolds, or ropes, or work around unprotected heights or dangerous equipment due to her hypertension. The claimant can also tolerate no more than occasional exposure to temperature extremes, humidity, wetness, and concentrated pollutants due to her asthma.

As for the claimant's subjective allegations of pain and headaches, the claimant's allegations are not fully credible. The claimant has a history of conservative treatment, consisting generally of routine physical examinations and medication adjustments and refills. Although treatment notes document some difficulties controlling the claimant's diabetes, treatment notes also show that the claimant has repeatedly failed to take her diabetes medication as prescribed and to follow up on dietary recommendations from her physicians. Consequently, the record contains little useful evidence regarding the claimant's response to appropriate treatment or the residual impact of her symptoms on her work related functioning. Moreover, treatment notes show the claimant's pain as generally mild (0 on a scale of 1 to 10 with an occasional higher rating) and the claimant in no acute distress. The claimant testified that she is taking only over the counter medication and Neurotin for pain management. Neither Dr. McDaniel nor any other treating physician referred the claimant to a pain specialist. Similarly, Dr. McDaniel's decision to recommend follow up treatment only every four months suggests the claimant's pain is not as limiting as she alleges. Although hospital treatment notes document a flare up of abdominal pain in May of 2010, the record shows that the claimant's symptoms quickly resolved after she was given appropriate medication. The claimant has not alleged

any side effects from her medication. I have nonetheless given the claimant the benefit of the doubt in formulating the residual functional capacity finding by precluding the claimant from climbing ladders, scaffolds and ropes, and working around unprotected heights and dangerous equipment. I also acknowledge that the claimant's pain may cause a reduction in her ability to concentrate and accordingly preclude her from performing detailed or complex job tasks.

With respect to the claimant's specific allegation of foot pain, treatment notes generally show normal foot exams. I have nonetheless fully accommodated the claimant's allegations by limiting her to no more than occasional use of foot controls and by providing a sit/stand option.

Although the claimant reported experiencing pain in her hands there are no objective findings of peripheral neuropathy or other severe impairment involving her hands. I note that the claimant testified that she braids her hair and her sister's hair and thus find no significant limitations in the claimant's ability to perform fine manipulative type work.

As for the claimant's credibility in general, the claimant's significant work history after the alleged disability onset date, while not substantial gainful activity, nonetheless undermines the claimant's allegations regarding the extent of her functional limitations.

As for the opinion evidence, I give little weight to the opinion of Dr. McDaniel. Dr. McDaniel's opinion is inconsistent with his own treatment notes, which document only "some" pain with movement of the claimant's ankles, wrists, and knees and "a decrease" in vibratory sense in her feet, hand grip and light touch to the ankles with no indication of any significant neurological limitation. Dr. McDaniel's opinion is also inconsistent with the bulk of the objective medical evidence. Moreover, although Dr. McDaniel does have a treating relationship with the claimant, he has evaluated the claimant on only three separate occasions. The claimant's treating physicians at Franklin Primary Health Center, with whom the claimant has sought treatment since 2006, have not opined that the claimant is unable to work or imposed limitations more restrictive than those set forth in the residual functional capacity finding. Additionally, although Dr. McDaniel attributed some of the claimant's limitations to hypertension and asthma, there is no evidence in the record of any functional limitations related to these impairments. I have also considered the opinion of Dr. McDaniel expressed in the Clinical Assessment of Pain but give it little weight as it is inconsistent with treatment notes, which generally document only mild pain. As for Dr. McDaniel's opinion that the claimant is unable to work, it is unclear whether Dr. McDaniel is referring solely to an inability to perform the claimant's past work. In any event, Dr. McDaniel's opinion addresses an issue reserved solely to the Commissioner.

In sum, the above residual functional capacity assessment is supported by a preponderance of the most credible objective evidence of record, including the claimant's conservative treatment history and physician treatment notes.

**6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).**

**7. The claimant was born on January 1, 1987 and was 21 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).**

. . .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as garment sorter, DOT Code 222.687-014 (approximately 280,000 jobs in the national economy, 3,000 in Alabama); cashier, DOT Code 211.462-010 (approximately 350,000 jobs in the national economy, 5,000 in the Alabama); and parking lot attendant, DOT Code 915.473-010 (approximately 115,000 jobs in the national economy, 2,000 in Alabama).

Although the vocational expert's testimony includes information outside the scope of the definitions of jobs contained in the Dictionary of

> Occupational Titles, there is a reasonable explanation for the expansion. The DOT does not contain information specific to jobs that allow the worker to sit and stand as necessary. The vocational expert's testimony regarding the availability of jobs allowing a sit/stand option is based on his education, experience, and training. I find this credible and the explanation for the deviation from the DOT is accepted.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
> **11. The claimant has not been under a disability, as defined in the Social Security Act, from August 26, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 19-20, 20, 20-21, 21 & 22-25 (most internal citations omitted).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light jobs

allowing for a sit/stand option identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff contends that the ALJ erred in rendering a residual functional capacity assessment which is not supported by the medical opinion of any treating or examining medical source and, additionally, erred in failing to adequately develop the administrative record.

The undersigned will consider these issues together but prior to doing so it is necessary for the Court to set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one, given the defendant's consistent stance in numerous cases presently pending before this Court that in past cases this Court has conflated the fourth and fifth steps of the sequential evaluation process with respect to who has the burden of developing the evidence necessary to determine residual functional capacity. (*See* Doc. 14, at 6-9.)

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'" *Hanna v. Astrue,* 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1) (2011) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level under § 404.929 or at the Appeals Council review level under § 404.967, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); *see also* 20 C.F.R. § 416.946(c) (same), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for

developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources. 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id*.

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. §§ 404.1545(a)(4) & 416.945(a)(4).

> (b) *Physical abilities*. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.
>
> (c) *Mental abilities.* When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.
>
> (d) *Other abilities affected by impairment(s).* Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which

> may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's rejection of such

opinion,[3] 223 Fed.Appx. at 923-924; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[4] *Compare, e.g., Saunders v. Astrue,* 2012 WL 997222,

---

[3] An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

[4] In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id*. at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must**—**<u>in all cases</u>—include** an RFC or PCE from a physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ (Continued)

*5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.") *with* 20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without

---

**necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence. [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

> specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.
>
> **The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

The Court now considers the issues raised by plaintiff, namely whether the ALJ erred in rendering a residual functional capacity assessment not supported by the medical opinion of any treating or examining medical source and whether she erred by failing to adequately develop the administrative record.

Based upon the previous legal analysis set forth above, the Court need reject plaintiff's argument that the Commissioner, through the ALJ, cannot render an RFC that is not supported by the medical opinion of a treating or examining medical source. Through its decision in *Green, supra,* the Eleventh Circuit has expressly rejected this argument. *See* 223 Fed.Appx. at 923-924. Indeed, the Eleventh Circuit indicated in *Green* that where an ALJ articulates specific reasons, supported by substantial evidence, for failing to give the RFC opinion of a treating physician controlling weight, and the ALJ properly links the remaining evidence of record (after such rejection) to the RFC assessment, such assessment can be found to be supported by substantial evidence. *See id*.[5]

[5] Based upon the *Green* decision, this Court need also reject the alternative argument that the ALJ erred in failing to develop the record in this case specifically by not ordering a consultative examination to get a better picture of plaintiff's residual functional capacity instead of conjuring up her own residual functional capacity. (*See* Doc. 13, at 12-15.) As noted, as long as the ALJ properly links her RFC determination—a determination admittedly reserved to the ALJ, 20 C.F.R. §§ 404.1546(c) & 416.946(c)—to evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work, there is no requirement that the ALJ obtain a consultative examination to obtain a better picture of the claimant's RFC, 20 C.F.R. §§ 404.1519a(b) & 416.919a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."). *Compare Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001) ("The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources.") *with Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("Here, the record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice.").

> The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore [v. Barnhart]*, 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert, supra,* 396 Fed.Appx. at 655.

In this case, the ALJ accorded no weight to any of Dr. Huey McDaniel's medical opinions rendered on August 19, 2010: his narrative statement that plaintiff is "unable to work[]" (Tr. 265); his PCE opinion reflecting an inability to sit, stand, and walk for eight hours during an eight-hour workday (Tr. 289); and his pain assessment reflecting the presence of pain to such an extent as to be distracting to the adequate performance of work activities (Tr. 264). Although plaintiff does indicate in her brief that the ALJ erroneously stated that Dr. McDaniel's PCE opinion was inconsistent with the bulk of the objective medical evidence (*see* Doc. 13, at 6), this was not the only reason offered by the ALJ for rejecting the various "opinions" of Dr. McDaniel. The ALJ's analysis of the opinion evidence offered by Dr. McDaniel consists of the following:

> As for the opinion evidence, I give little weight to the opinion of Dr. McDaniel. Dr. McDaniel's opinion is inconsistent with his own treatment notes, which document only "some" pain with movement of the claimant's ankles, wrists, and knees and "a decrease" in vibratory sense in her feet, hand grip and light touch to the ankles with no indication of any significant neurological limitation. Dr. McDaniel's opinion is also inconsistent with the bulk of the objective medical evidence. Moreover, although Dr. McDaniel does have a treating relationship with the claimant, he has evaluated the claimant on only three separate occasions. The claimant's treating physicians at Franklin Primary Health Center, with whom the claimant has sought treatment since 2006, have not opined that the claimant is unable to work or imposed limitations more restrictive than those set forth in the

> residual functional capacity finding. Additionally, although Dr. McDaniel attributed some of the claimant's limitations to hypertension and asthma, there is no evidence in the record of any functional limitations related to these impairments. I have also considered the opinion of Dr. McDaniel expressed in the Clinical Assessment of Pain but give it little weight as it is inconsistent with treatment notes, which generally document only mild pain. As for Dr. McDaniel's opinion that the claimant is unable to work, it is unclear whether Dr. McDaniel is referring solely to an inability to perform the claimant's past work. In any event, Dr. McDaniel's opinion addresses an issue reserved solely to the Commissioner.

(Tr. 23-24.) This portion of the ALJ's decision certainly reflects an articulation of specific and adequate reasons, supported by substantial evidence, for rejecting the various opinions offered by Dr. McDaniel. *See Gilabert, supra,* 396 Fed.Appx. at 655. In particular, this Court agrees with the ALJ that Dr. McDaniel's PCE assessment (Tr. 289) , to the extent it relates to the diabetes mellitus, is inconsistent not only with his own treatment records documenting only "some" pain with movement of the ankles, wrists and knees and a "decrease" in vibratory sense in her feet, hand grip and light touch to the ankles with no indication of any significant neurological limitation (Tr. 240, 243, 246 & 288),[6] but, as well, with the remaining medical evidence of record which simply documents that Wright's diabetes mellitus was uncontrolled because of noncompliance—with medications and diet—(*see, e.g.,* Tr. 192-214).[7] Moreover, the undersigned also agrees with the ALJ that Dr. McDaniel's pain assessment was

[6] To the extent the PCE putatively relates to Wright's hypertension and asthma (*see* Tr. 289), the undersigned agrees with the ALJ that there is absolutely nothing in the record reflecting functional limitations attributable to these impairments. (*Compare* Tr. 24 *with* Tr. 41-47, 152-158, 192-225, 240-263 & 287-288.)

[7] Indeed, even after plaintiff started seeing Dr. McDaniel (*see* Tr. 243-247 (reflecting Dr. McDaniel's first evaluation occurred on January 19, 2010)), progress notes from Franklin Primary Health Center reflect plaintiff's continued noncompliance with dietary restrictions (Tr. 257).

inconsistent with the treatment notes, which document only mild or "some" pain associated with diabetes mellitus (*compare* Tr. 24 *with* Tr. 192, 197, 201, 209, 240 & 246) and that his narrative statement that plaintiff is disabled was not entitled to weight since the issue of disability is reserved solely to the Commissioner (Tr. 24). Thus, the ALJ committed no reversible error in failing to accord Dr. McDaniel's various opinions any weight.

In absence of Dr. McDaniel's various "opinions," the undersigned next considers whether the ALJ linked her RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work. The undersigned has carefully reviewed the ALJ's opinion in this case and finds that the ALJ engaged in the most comprehensive job this Court has ever seen in terms of linking her RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work (Tr. 20-21 & 21-24), specifically noting that her "residual functional capacity assessment is supported by a preponderance of the most credible objective evidence of record, including the claimant's conservative treatment history and physician treatment notes." (Tr. 24.) Moreover, this case is very similar to *Green* in that the documentary evidence remaining after the ALJ properly discredited the various RFC opinions of Dr. McDaniel consists of the office visit records from Dr. McDaniel and Franklin Primary Health Center which reflect uncontrolled diabetes mellitus due to noncompliance, "a decrease in vibratory sense in her feet and a decreased grip in her hands and decreased light touch up to just above the ankles[,]" but no significant neurological limitation, and some feet and hand pain controlled by over-the-counter

medication and Neurotin. The ALJ's RFC assessment that plaintiff can perform only those light jobs which allow for a sit/stand option, require only occasional operation of foot controls, require no work involving ladders, scaffolds, ropes, unprotected heights or dangerous machinery, require only occasional exposure to temperature extremes, humidity, wetness, and concentrated environmental pollutants, and do not require performance of detailed or complex job tasks,[8] sufficiently accommodates the remaining significant clinical findings of record relating to plaintiff's diabetes mellitus (as well as all other limitations that could possibly arise from plaintiff's other severe and non-severe impairments), such that the Commissioner's fifth-step denial of benefits is due to be affirmed.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 9th day of April, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[8] The ALJ posed to the vocational expert a hypothetical question which encompassed all of these RFC "limitations" (*see* Tr. 49) and in response to this hypothetical, the VE identified several jobs (i.e., garment sorter, cashier, and parking lot attendant) existing in significant numbers in the national economy (and the State of Alabama) that such a hypothetical person can perform (Tr. 50; *compare id. with* Tr. 25). Thus, the ALJ's fifth-step determination is supported by substantial evidence. *See Allen v. Bowen,* 816 F.2d 600, 602 (11th Cir. 1987) (VE's testimony that 174 small appliance positions existed in the area where claimant resided was substantial evidence supporting the Commissioner's fifth-step denial of benefits).